**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| GLORETHA JUSTICE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-09-188 |
| | § | |
| MICHAEL ASTRUE, Commissioner | § | |
| of the Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This matter was referred by United States District Judge Lee H. Rosenthal, for full pretrial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry #6). Cross motions for summary judgment have been filed by Plaintiff Gloretha Justice ("Plaintiff," "Justice") and by Defendant Michael J. Astrue ("Defendant," "Commissioner'), in his capacity as Commissioner of the Social Security Administration ("SSA"). (Plaintiff's Brief ["Plaintiff's Motion"], Docket Entry #11; Defendant's Motion for Summary Judgment and Brief in Support of Motion for Summary Judgment ["Defendant's Motion"], Docket Entries #15, #16). Each party has filed a response to the competing motions. (Defendant's Response to Plaintiff's Motion for Summary Judgment ["Defendant's Response"], Docket Entry #17; Plaintiff's Reply Brief ["Plaintiff's Response"], Docket Entry #20). After considering the pleadings, the administrative transcript, and the applicable law, it is RECOMMENDED that Plaintiff's motion be DENIED, and that Defendant's motion be GRANTED.

**Background**

On July 20, 2005, Plaintiff Gloretha Justice applied for Social Security Disability Insurance Benefits ("DIB") and Disabled Widow's Insurance benefits ("DWB"), under Title II of the Social Security Act ("the Act"), and for Supplemental Security Income ("SSI"), under Title XVI of the Act.[1] (Transcript ["Tr."] at 2, 4, 26, 121-23).  In her applications, she stated that she has been unable to work since March 6, 2005, when she fell down the stairs at work and injured her left foot.  (Tr. at 138-40).  She claimed that the injury did not heal well, and that, as a result, she cannot stand or walk for any distance without pain.  (Tr. at 13, 138-40).  On November 29, 2005, the SSA denied Justice's applications, after finding that she was not disabled for purposes of the Act.  (Tr. at 26). On December 5, 2005, Justice filed a request for reconsideration on the basis that she is "limited" in her ability to stand and to walk by the fact that when she does so, she "experience[s] excruciating pain in the left foot."  (Tr. at 111).  Nonetheless, on February 22, 2006, the SSA affirmed its earlier judgment.  (Tr. at 26).  On August 3, 2006, Justice requested a hearing before an administrative law judge ("ALJ").  (Tr. at 117).  That hearing, before ALJ Paul Schwarz, took place on April 2, 2008. (Tr. at 8, 26).  Plaintiff waived her right to legal representation, but she testified in her own behalf. (Tr. at 10-11, 13-18).  The ALJ also heard testimony from Rhonda Justice, Plaintiff's daughter, and from Dr. Albert Oguejiofor ("Dr Oguejiofor"), a specialist in internal medicine.  (Tr. at 18-22).  Joel Quintela, a vocational expert, also appeared at the hearing, but he was not asked to testify.  (Tr. at 8).

---

[1] While the programs differ, an applicant seeking any of these benefits must prove that she is "disabled" within the meaning of the Act.  *See* 42 U.S.C. §§ 402(e)(1)(B)(ii); 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505(a), 416.905(a); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

On April 10, 2008, the ALJ began the following five-step sequential analysis to determine whether Justice was capable of performing substantial gainful activity or was, in fact, disabled:

1. An individual who is working or engaging in substantial gainful activity will not be found disabled regardless of the medical findings. 20 C.F.R. §§ 404.1520(b) and 416.920(b).

2. An individual who does not have a "severe impairment" will not be found to be disabled. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will not be considered disabled without consideration of vocational factors. 20 C.F.R. §§ 404.1520(d) and 416.920(d).

4. If an individual is capable of performing the work she has done in the past, a finding of "not disabled" must be made. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

5. If an individual's impairment precludes performance of her past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if any work can be performed. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172, 173-74 (5th Cir. 1995); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). It is well-settled that, under this analysis, Justice has the burden to prove any disability that is relevant to the first four steps. *See Wren*, 925 F.2d at 125. If she is successful, the burden then shifts to the Commissioner, at step five, to show that she is able to perform other work that exists in the national economy. *See Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Wren*, 925 F.2d at 125. "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

It must be emphasized that the mere presence of an impairment does not necessarily establish a disability. *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)). An individual claiming disability insurance benefits under the Act has the burden to prove that she suffers from a disability. *See Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Under the Act, a claimant is deemed disabled only if she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing 42 U.S.C. § 423(d)(1)(A)). "Substantial gainful activity" is defined as "work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452. A physical or mental impairment is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (citing 42 U.S.C. § 423(d)(3)). Further, the impairment must be so severe as to limit the claimant so that "she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any kind of substantial gainful work which exists in the national economy." *Greenspan*, 38 F.3d at 236 (citing 42 U.S.C. § 423(d)(2)(A)).

Based on these principles, as well as on his review of the evidence, the ALJ determined that Justice suffers from a "left foot bunion,"[2] but that she "does not have a severe impairment or combination of impairments" that would qualify her as "disabled" within the meaning of the Act.

---

[2] A "bunion" is "an abnormal enlargement of the joint at the base of the great toe." MOSBY'S MEDICAL, NURSING, & ALLIED HEALTH DICTIONARY 237 (5th ed. 1998).

4

(Tr. at 29).  Because he found, at step two of his analysis, that Justice's impairment is not "severe," the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from March 6, 2005 through the date of this decision."  (Tr. at 29, 31).  *See Newton*, 209 F.3d at 453; *Wren*, 925 F.2d at 125; *Lovelace*, 813 F.2d at 58.  For that reason, he denied her applications for benefits.  (Tr. at 31-32).

Subsequently, Justice requested an Appeals Council review of the ALJ's decision.  (Tr. at 5).  SSA regulations provide that the Appeals Council will grant a request for a review if any of the following circumstances is present:  "(1) there is an apparent abuse of discretion by the ALJ; (2) an error of law has been made; (3) the ALJ's action, findings, or conclusions are not supported by substantial evidence; or (4) there is a broad policy issue which may affect the public interest."  20 C.F.R. §§ 404.970 and 416.1470.  On June 26, 2008, the Appeals Council denied Justice's request for review, finding that no applicable reason for review existed.  (Tr. at 5-7).  With that ruling, the ALJ's findings became final.  *See* 20 C.F.R. §§ 404.984(b)(2) and 416.1484(b)(2).

On August 19, 2008, attorney Carl Weisbrod ("Weisbrod") informed the Appeals Council that he would represent Justice in her civil suit, and he requested an extension of time in which to file that action.  (Tr. at 33-34, 36).  On December 22, 2008, the Appeals Council granted his request.  (Tr at 35).  On January 26, 2009, Weisbrod, as Plaintiff's counsel, filed this suit, pursuant to section 205(g) of the Act (codified as amended at 42 U.S.C. § 405(g)), to challenge the denial of benefits.  (Complaint, Docket Entry #1).  Subsequently, the parties filed cross-motions for summary judgment.  Having considered the pleadings, the evidence submitted, and the applicable law, it is recommended that the ALJ's decision be upheld.

**Standard of Review**

Federal courts review the Commissioner's denial of disability benefits only to ascertain whether the final decision is supported by substantial evidence and whether the proper legal standards were applied. *See Newton*, 209 F.3d at 452 (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). "If the Commissioner's findings are supported by substantial evidence, they must be affirmed." *Id*. (citing *Martinez*, 64 F.3d at 173). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see Martinez*, 64 F.3d at 173 (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 22 (5th Cir. 1990)). On review, the court does not "reweigh the evidence, but ... only scrutinize[s] the record to determine whether it contains substantial evidence to support the Commissioner's decision." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *see Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). In making this determination, the court must weigh the following four factors: the objective medical facts; the diagnoses and opinions from treating physicians on subsidiary questions of fact; Plaintiff's own testimony about her pain; and Plaintiff's educational background, work history, and present age. *See Wren*, 925 F.2d at 126. If no credible evidentiary choices or medical findings support the Commissioner's decision, then a finding of no substantial evidence is proper. *See Johnson*, 864 F.2d at 343.

**Discussion**

Before this court, Plaintiff challenges the SSA's decision on a single ground: that "[t]he ALJ applied an incorrect legal standard in assessing whether the Plaintiff's improperly healed left-foot

fracture and the resulting hallux valgus deformity[3] are 'severe' impairments at step two." (Plaintiff's Motion at 10).  Defendant insists, however, that the ALJ followed the applicable law in determining that Plaintiff is not disabled.   (Defendant's Response at 3-4).   Notably, in her response to Defendant's motion, Justice makes clear that her challenge at this time is only to the legal standard used by the ALJ, not to whether the ALJ's decision is supported by substantial evidence. (Plaintiff's Response at 1-2).

### Medical Facts, Opinions, and Diagnoses

The administrative transcript contains very few medical records that pertain to Plaintiff's foot; according to Plaintiff and her daughter, she has primarily treated herself with over-the-counter pain relievers, and does not get medical help because she does not have insurance.  (Tr. at 15-17, 19).  Plaintiff also states that she has not been hospitalized during the relevant period.  (Tr. at 150).

The earliest medical record, dated October 17, 2005, is from a medical examination performed by Dr. Mhrete Gebre-Selassie ("Dr. Gebre-Selassie"), a specialist in internal medicine, on behalf of the state.  (Tr. at 141-47).  Dr. Gebre-Selassie noted that Justice complained of a "[b]roken left foot that healed incorrectly from March 2005."  (Tr. at 141).  Justice gave the doctor the following summary of her injury on March 6, 2005:

> Patient states that she was picking up trash at her job when she fell and injured her left foot.  She went to the emergency room and was given crutches and she only used them for one week because [they] made her arms sore.  She states the pain in her left foot persisted, so she started hopping on her right foot to get across the room.

---

[3] A "hallux valgus" is "a deformity in which the great toe is angulated away from the midline of the body toward the other toes."  *Id*. at 726.

(*Id*.).  Dr. Gebre-Selassie commented that Justice "did not follow the protocol that [was] given to her at the hospital for her injury."  (*Id*.).  The doctor also reported that Justice was currently taking ibuprofen for pain relief, and that, overall, Justice "has been basically healthy" over time, with the exception of "having peptic ulcers in 1986."  (*Id*.).  From her examination of Justice, Dr. Gebre-Selassie made the following findings regarding the discomfort in her left foot:

> There is some weakness with non use atrophy[4] in left ankle joint and foot with noted weakness on scale of 2+/4+ with no limitations of flexing, extension, eversion or aversion.

(Tr. at 143).  She then ordered an x-ray of Plaintiff's left foot, which revealed the following:

> AP and lateral views of the left foot demonstrate no fracture, dislocation, or other acute post traumatic abnormality.  There is hallux valgus deformity at the first metatarsal phalangeal joint with bunion formation.  The soft tissues are otherwise unremarkable.

(Tr. at 143, 145-47).  The radiologist's impressions were that Justice had "[n]o acute post traumatic bony abnormality of the left foot," and that she had a "[h]allux valgus deformity with bunion."  (Tr. at 145).  Dr. Gebre-Selassie concluded the following on Justice's medical condition:

> The patient is able to sit, stand, move about, lift, carry and handle objects. . . .  She ambulates without any assisting devices.  She can forward bend to 90 degrees.  She is able to do heel to toe walking with great effort as she claims her foot sustains substantial pain when doing so.  She is able to flex her knees, bend, stoop, squat without any difficulties.  There is no motor, sensory or reflex abnormalities with reduction distribution.  Both action and passive range of motion of the left ankle joint is adequate, but the ankle muscles are slightly atrophied most likely from non use.

(Tr. at 144).  As a final matter, she also noted that Justice had no difficulty with use of her hands or fingers, that she could write, and that Plaintiff "states she still drives and operates her motor vehicle."  (*Id*.).

---

[4] The term "atrophy" refers to "a wasting or diminution of size or physiologic activity of a part of the body because of disease or other influences," such as "lack of physical exercise."  *Id*. at 146.

8

The other two records are a case assessment and a review of that assessment, both completed on behalf of the state.  (Tr. at 148-49).  The first, dated November 18, 2005, was completed by Dr. Frederick Cremona ("Dr. Cremona"), an orthopedic surgeon.  (Tr. at 148).  Dr. Cremona's report contains the following findings:

> 53 year old female wo alleges foot pain from injury that occurred in 3/05.  Clmt went to ER and she was told to use crutches.  The clmt was non-complaint and stopped using the crutches because they hurt her arms.  CE done 10/05 shows the clmt has normal physical exam besides questionable weakness in left ankle joint and hypertension [untreated].  The clmt ambulates normal and has normal strength and ROM is normal.  Clmt heel toe walking shows some pain.
>
> Clmt drives and does all her [activities of daily living].

(*Id*.).  The doctor's conclusion was that Justice had only a "non-severe impairment."  (*Id*.).  In the second assessment, dated February 3, 2006, Dr. John Durfor ("Dr. Durfor"), a general practitioner, reviewed the record and Dr. Cremona's assessment.  (Tr. at 149).  Affirming the findings by Dr. Cremona, Dr. Durfor stated that Justice's only medically determinable impairment is a "left foot injury," and that the condition is not "severe."  (*Id*.).

### *Educational Background, Work History, and Present Age*

At the time of the hearing, Justice was 57 years old.  (Tr. at 17).  It is not clear from the record what level of education she achieved, but  Justice's work history includes jobs as a "cook, tray aid, and a server" at a nursing home.  (Tr. at 14).

### *Subjective Complaints*

In her application for disability benefits, Justice stated that she could not work because of an injury she sustained to her left foot in 2005, and the pain that she continues to experience as a result.  (Tr. at 138-40).  She completed a Daily Activity Questionnaire, in which she reported that she is "not able to stand for very long" because of the pain.  (Tr. at 138).  She explained,

9

> When I stand for more than 5-to-10 min, my foot pain hurt is unbearable.  I have to
> get off my foot.

(*Id*.).  She stated that, when the pain is bad, she has to elevate her foot for relief.  (*Id*.).  Plaintiff

stated that, on an average day, it is difficult for her to get out of bed, because her foot hurts when

she puts weight on it.  (*Id*.).  She claimed that all of her limitations are due to the fact that putting

weight on her left foot causes her pain.  (Tr. at 139).

At the hearing, Justice testified that she became disabled on March 6, 2005, when she fell

down some stairs at work and broke her foot.  (Tr. at 13).  She testified, "I was told that my foot

would probably have to be amputated, and I'm still having pain with it to this day."  (*Id*.).  However,

she also testified that she was not hospitalized as a result of her injury, and was just "told to take

Tylenol."  (*Id*.).  She described the extent of her medical care, as follows:

> A prescription wasn't written.  They gave me crutches, a brace for the foot.  They
> didn't put it in a cast, and it just didn't heal right.

(Tr. at 14).  Plaintiff testified that she is still using over the counter medications to alleviate the pain

in her left foot.  (Tr. at 15).  She informed the ALJ that she could not think of any physical ailments

that she suffered from, aside from the pain in her foot, nor did she have any mental health problems.

(Tr. at 17-18).

As to her abilities, Justice testified that she cannot stand for more than five to ten minutes,

but that she has no limitations "on sitting."  (Tr. at 15).  She also testified that she can only walk a

few feet without pain.  (Tr. at 16).  In addition, she testified that she has tried, on at least two

occasions, to walk further distances, but that she stopped because she fell down.  (*Id*.).  Plaintiff

testified that no doctor has ever given her a prescription for crutches or for a cane.  (Tr. at 16-17).

She estimated that she can lift and carry three to five pound items without difficulty.  (Tr. at 17).

Justice testified that, at the time of the accident, she "was a cook, tray aid, and a server" at a nursing home.  (Tr. at 14).

### *Lay Testimony*

At the hearing, the ALJ also heard testimony from Plaintiff's daughter, Rhonda Justice.  (Tr. at 18-19, 20-22).  Rhonda Justice testified that her mother's pain can be so severe that it is almost "paralyzing."  (Tr. at 18).  She testified that Plaintiff cannot stand on her left foot for more than fifteen minutes before her ankle begins to swell.  (Tr. at 19).  She also testified that she can only assist her mother by providing Tylenol, because her mother does not have insurance, and she cannot afford her medical care.  (*Id*.).

Rhonda Justice testified, as well, that her mother's impairment is not the result of the bunion, because "[t]he bunion has always been there."  (Tr. at 21).  She stated that the problem was that Plaintiff fell at work and broke her foot, and that it did not heal properly.  (*Id*.).  She also testified that "the range of motion in [her mother's] foot is very limited."  (Tr. at 21-22).

### *Expert Testimony*

Dr. Albert Oguejiofor testified at the hearing as a medical expert.  (Tr. at 19-20).  Dr. Oguejiofor told the ALJ that he did not have any records of Justice's medical care on the day of her accident, but he noted that the consultative examination and x-rays that were performed only seven months later revealed "no severe abnormalities."  (*Id*.).  He pointed out that the examination revealed "some weakness with non-use atrophy of the left ankle joint," but that the x-ray revealed "no fracture, no dislocation, and no posttraumatic abnormality."  (Tr. at 20).  Dr. Oguejiofor testified that, "[w]hat she does have is a bunion."  (*Id*.).  The doctor also testified that he would not consider the bunion to be a "severe" impairment.  (*Id*.).

### *The ALJ's Decision*

Following the hearing, the ALJ made written findings on the evidence.  From his review of the record, he determined that Justice suffers from "a left foot bunion," but that the impairment is not "severe."  (Tr. at 29).  He concluded that Justice "has not been under a disability, as defined in the Social Security Act, from March 6, 2005 through the date of this decision."  (Tr. at 31).  With that determination, he denied Justice's applications for benefits.  (Tr. at 31-32).  That denial prompted Plaintiff's request for judicial review.

It is well settled that judicial review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence, and whether the ALJ applied the proper legal standards in making it.  *See Myers*, 238 F.3d at 619; *Newton*, 209 F.3d at 452 (citing *Brown*, 192 F.3d at 496).  Any conflict in the evidence is to be resolved by the ALJ, and not the court.  *See id*.  A finding of "no substantial evidence" is proper only if there are no credible medical findings or evidentiary choices that support the ALJ's decision.  *See Johnson*, 864 F.2d at 343-44 (quoting *Hames*, 707 F.2d at 164).

Here, Plaintiff argues that "[t]he ALJ applied an incorrect legal standard in assessing whether the [her] improperly healed left-foot fracture and the resulting hallux valgus deformity are 'severe' impairments at step two."  (Plaintiff's Motion at 10).  At step two of the five-part analysis, an ALJ must determine whether a claimant's impairment is "severe."  *See Newton*, 209 F.3d at 453.  The Fifth Circuit has set out the following standard for determining whether an impairment is severe for purposes of the Act:

> "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."

*Anthony*, 954 F.2d at 293 (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting

*Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).  In *Anthony*, the Fifth Circuit explained that

this standard developed because the definition provided by the regulations was too strict.  *See id*.

at 293-94.  According to the regulations,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.

20 C.F.R. §§ 404.1520(c) & 416.920(c).  Referring to this definition, the Fifth Circuit, in *Anthony,*

made the following comments:

> Noting that the severity regulation defined "severe impairment" to include far fewer conditions than apparently the statutory language intended, we warned that we could not condone the Secretary's use of the severity regulation to systematically deny benefits to claimants who otherwise satisfy the statutory criteria.  Although we recognized in *Stone* that the fact finder is entitled to follow a sequential process that disposes of appropriate cases at an early stage, we also recognized that it is impermissible to conduct the evaluation in such a manner as to deny benefits to individuals who are in fact unable to perform "substantial gainful activity."

954 F.2d at 293 (citing *Stone*, 752 F.2d at 1103).  However, the *Anthony* court was careful to note

that it was not making a determination that the regulation was invalid.  *See id*. at 294-95.

> In this case, at the second step of his analysis, the ALJ made the following finding:

> The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments.

(Tr. at 29).  Clearly, this language is similar to that of the relevant regulation.  *See* 20 C.F.R.

§§ 404.1520(c) & 416.920(c).  But it is also clear that the ALJ did, in fact, apply the standard

articulated by the Fifth Circuit.  As an initial matter, in the portion of his decision titled "Applicable

Law," the ALJ acknowledged and set out the Fifth Circuit's standard.  (Tr. at 27).  Next, following

13

his "severity" finding, the ALJ gave a detailed explanation for his reasoning.  That explanation is consistent with the Fifth Circuit standard.  (Tr. at 29-31).  First, as required by that standard, the ALJ addressed the medical records which indicate that Justice has no more than a "slight abnormality." (Tr. at 30 [referring to Dr. Oguejiofor's testimony, the x-ray taken of her foot, and the findings of Dr. Gebre-Selassie ]).  Then he cited the medical evidence that supports a finding that Plaintiff's impairment has only a minimal effect on her ability to work.  (Tr. at 30-31 [addressing Dr. Oguejiofor's testimony and the findings of the state consultative physicians]).  And finally, he concluded that Plaintiff's impairment is not severe because it "does not cause more than a minimal limitation in her ability to function."  (Tr. at 31).  It is clear, then, that the ALJ's decision was based on the Fifth Circuit standard.  (*See* Tr. at 30-31).

In this case, the ALJ applied the proper legal standard in determining that Justice's impairment is not "severe."  *See Anthony*, 954 at 293.  Because he properly found that she does not have a severe impairment, the ALJ was justified in ending his inquiry after step two of the required analysis of her claim.  *See Lovelace*, 813 F.2d at 58).  For these reasons, the ALJ did not err in finding that Plaintiff is not disabled for purposes of the Social Security Act, and Plaintiff's motion should be denied.  *See id*.

**Conclusion**

Accordingly, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, and that Defendant's Motion for Summary Judgment be **GRANTED**.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1) (effective Dec. 1, 2009).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Lee H. Rosenthal, Room 11535, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 23rd day of February, 2010.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**

15